UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID SEIDE, an individual; and<br><br>DEFINED SPACE, INC., an Illinois corporation,<br><br>   Plaintiffs,<br><br>   v.<br><br>LEVEL-(1) GLOBAL SOLUTIONS, LLC, an Illinois limited liability company; and<br><br>STEADFAST NETWORKS, LLC, a Delaware limited liability company,<br><br>   Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiffs, DAVID SEIDE and DEFINED SPACE, INC. (collectively "plaintiffs" or "DEFINED SPACE"), as and for their Complaint against Defendants, LEVEL-(1) GLOBAL SOLUTIONS, LLC ("LEVEL-1") and STEADFAST NETWORKS, LLC ("STEADFAST") (collectively "Defendants"), state as follows:

### I. NATURE OF ACTION

1. This is an action for (a) copyright infringement under 17 U.S.C. § 501, et. seq.; violation of the Digital Millennium Copyright Act provisions of the U. S. Copyright Act, 17 U.S.C. § 501, et. seq.; and (b) breach of contract under Illinois state law.

2. This action results from Defendants' willful, unauthorized and infringing display of photographic works owned by DAVID SEIDE, as well as the removal of copyright management information in violation of federal law. Plaintiffs seek to recover damages, costs and equitable relief.

## II. JURISDICTION AND VENUE

3. The claims for relief arise under and relate to the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq.* and related state law claims.

4. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because the claims arose in this District, a substantial part of the events giving rise to the claims herein occurred in this District, and one or more Defendants reside in this District, can be found in this District and are doing business in this District.

6. This Court has jurisdiction over Defendant LEVEL-1 because LEVEL-1 has its principal place of business in this State and District and is engaging in various activities within this State and District, including transacting business within this District. This Court has jurisdiction in the Eastern Division because LEVEL-1 has its principal place of business in this Division and a substantial part of the events giving rise to the claims herein occurred in this Division.

7. This Court has jurisdiction over Defendant STEADFAST because STEADFAST has its principal place of business in the State and District and is engaging in various activities within this State and District, including transacting business within this District. This Court has jurisdiction in the Eastern Division because a substantial part of the events giving rise to the claims herein occurred in this Division.

### III. PARTIES

8. DAVID SEIDE is a U.S. citizen and professional photographer who currently resides in Chicago, Illinois.

9. DEFINED SPACE, INC. is an Illinois corporation with a registered address and principal place of business at 225 W. Huron Street, Suite 417, Chicago, Illinois 60654.

10. DEFINED SPACE provides architectural photography services to its clients, including photography of homes, office buildings, commercial buildings, sculptural works, and other natural, commercial, corporate, governmental, health care, institutional and industry settings. DEFINED SPACE also licenses and/or facilitates licenses of copyright works on behalf of and for the benefit of DAVID SEIDE.

11. LEVEL-(1) GLOBAL SOLUTIONS, LLC is an Illinois limited liability company with its registered address at 233 S. Wacker Dr., Floor 84, Chicago, Illinois 60606 and a principal place of business at 22 W. Washington Street, Suite 1500, Chicago, Illinois 60602. On information and belief, LEVEL-1 provides technology infrastructure design, implementation, and management services to governmental, educational, healthcare and private institutions.

12. STEADFAST NETWORKS, LLC is a Delaware limited liability company with a registered address at 500 W. Madison Street, Suite 3700, Chicago, Illinois 60661 and a principal place of business at 350 E. Cermak Rd., Suite 240, Chicago, Illinois 60616. STEADFAST also maintains an office at 725 S. Wells Street, 8th Floor, Chicago, Illinois 60607. On information and belief, STEADFAST provides network and information technology solutions including hosting websites on its servers.

## IV. FACTS

### a. DAVID SEIDE'S Copyrighted Works

13. DAVID SEIDE owns the copyright in and to seven photographic works embodied in certain duly and legally issued copyright registration certificates (individually and collectively, the "Copyrighted Works") described as follows:

    a) Registration No. VA 1-923-975 described as "Group Registration Photos, Cook County Hospital, August 1, 2003; 7 photos," registered on August 6, 2014;

    b) Registration No. VA 1-923-973 described as "Group Registration Photos, CTA Brown Line Chicago L Stop, October 8, 2008; 4 photos," registered on August 6, 2014;

    c) Registration No. VA 1-923-978 described as "Group Registration Photos, Dearborn Center, February 8, 2006; 12 photos," registered on August 6, 2014;

    d) Registration No. VA 1-927-943 described as "DS0998_1080," registered on July 31, 2014; and

    e) Registration No. VA 1-916-247 described as "Group Registration Photos, Illinois, published May 1, 2007 to September 5, 2007; 5 photos," registered on July 31, 2014.

14. The Copyrighted Works are wholly original and copyrightable subject matter under the laws of the United States.

15. David Seide placed copyright management information on, in and in connection with the Copyrighted Works.

16. Plaintiffs complied in all respects with the Copyright Act of 1976, as amended, and all other laws governing copyright, and secured the exclusive rights and privileges in and to the copyrights in the Copyrighted Works.

17. At all relevant times, DAVID SEIDE has been and still is the sole proprietor of all rights, title, and interest in and to the copyrights in the Copyrighted Works.

### b. The Contract Between Plaintiffs and LEVEL-1

18. On or about March 2010, LEVEL-1 and Plaintiffs entered into an agreement granting LEVEL-1 the nonexclusive license to use the Copyrighted Works for a three-month period as flash components of LEVEL-1's website at the domain name <level-1.com> (the "Infringing Website") in exchange for a usage fee (the "LEVEL-1 License").

19. When Plaintiffs delivered the Copyright Works to LEVEL-1 in digital format on CD in or around March 2010, each of the Copyrighted Works contained embedded information about the work's title, author, creation date, copyright claimant, a copyright notice, and terms of use of the work.

20. The LEVEL-1 License states that "David B. Seide maintains all copyright and licensing rights;" therefore, LEVEL-1 knew that the Copyrighted Works were copyrighted works.

21. LEVEL-1 used and displayed the Copyrighted Works beyond use as flash components under the terms of the LEVEL-1 License, including without limitation creating unauthorized derivative works of the Copyrighted Works, impermissibly altering the Copyrighted Works, removing the copyright management information presented with

and embedded in the Copyrighted Works, and publishing the Copyrighted Works without regard to the copyright management information presented with and embedded in the Copyrighted Works.

22. Under the terms of the LEVEL-1 License, LEVEL-1 was required to accompany each of the Copyrighted Works used on the Infringing Website with the copyright notice: "© David B. Seide/DefinedSpace.com." Failure to include such a notice would result in a doubling of the license fee.

23. LEVEL-1 did not include the contractually required copyright notice accompanying any of the Copyrighted Works on the Infringing Website.

24. Pursuant to the terms of the LEVEL-1 License, the LEVEL-1 License terminated automatically at the end of its term of three months.

25. Upon the expiration of the term of the LEVEL-1 License and for many months thereafter, Plaintiffs attempted to contact LEVEL-1 to discuss LEVEL-1's unauthorized expanded use of the Copyrighted Works and the possibility of entering into a new license agreement.

26. On or around January 2011, after finally reaching and discussing the matter with LEVEL-1's Principal and CEO, Thomas McElroy, LEVEL-1 and Plaintiffs agreed to execute a new license with a term of June 22, 2010 through December 31, 2011, contingent upon LEVEL-1's immediate additional payment to Plaintiffs.

27. LEVEL-1 did not pay Plaintiffs the additional payment required to execute the new license.

28. On June 6, 2011, Plaintiffs, through its counsel, contacted LEVEL-1 to inform LEVEL-1 that it had breached the LEVEL-1 License and that its use of the Copyrighted Works was in violation of federal and state laws.

29. Plaintiffs have diligently and repeatedly contacted LEVEL-1 and Mr. McElroy to discuss the matter. Plaintiffs have provided LEVEL-1 with numerous options for entering into a new licensing agreement for use of the Copyrighted Works, including requesting payment for the additional period of time that LEVEL-1 has reproduced, distributed, and publicly displayed the Copyrighted Works without Plaintiffs' authorization and beyond the scope and term of the LEVEL-1 License.

30. Upon receiving verbal confirmation from Mr. McElroy that LEVEL-1 would enter into a new license agreement with Plaintiffs, Plaintiffs sent LEVEL-1 invoices for the additional uses of the Copyrighted Works. LEVEL-1 has not paid.

### c. DMCA Notices – Part 1

31. On or about June 23, 2015, NTT America, Inc. ("NTT") provided hosting services for the Infringing Website as an internet service provider ("ISP").

32. On June 23, 2015, Plaintiffs properly sent a notice of copyright infringement under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 501 to NTT's DMCA agent listed through the U.S. Copyright Office, demanding expeditious removal of the Copyrighted Works from the Infringing Website (the "NTT DMCA Notice").

33. On June 26, 2015 Plaintiffs received correspondence from NTT's abuse team regarding the infringement of the Copyrighted Works.

34. LEVEL-1 subsequently responded to the NTT DMCA Notice, and Plaintiffs again offered to enter into a new license agreement with LEVEL-1.

35. LEVEL-1 refused the new license offer, stating in an email to Plaintiffs that it had authorized its internet service provider "to remove the photos as expeditiously as possible," and the Copyrighted Works were subsequently removed from the Infringing Website.

### d. DMCA Notices – Part 2

36. On or around February 29, 2016, Plaintiffs discovered the new and continuing unauthorized use and display of the Copyrighted Works on the Infringing Website.

37. STEADFAST currently provides web hosting and other information technology services in connection with the Infringing Website.

38. On March 2, 2016, Plaintiffs, through its counsel, properly sent a notice to STEADFAST's DMCA agent listed through the U.S. Copyright Office, notifying STEADFAST of the infringement of Plaintiffs' copyrights under the Digital Millennium Copyright Act, 17 U.S.C. § 501, and demanding expeditious removal of the Copyrighted Works from the Infringing Website (the "STEADFAST DMCA Notice").

39. Despite STEADFAST's acknowledgement of receipt of the STEADFAST DMCA Notice on March 2, 2016 by email and on March 3, 2016 by telephone, STEADFAST has not caused the Copyrighted Works to be removed from the Infringing Website.

40. STEADFAST, upon obtaining actual knowledge and upon receiving notice of claimed infringement, has failed to act or respond expeditiously to remove, or disable

access to, the material that is claimed to be infringing, namely, the Copyrighted Works on the Infringing Website, and therefore cannot avail itself of the limitations on liability for copyright infringement under 15 U.S.C. §§ 512(c)(1)(A)(iii) and (C).

41.     The actions alleged herein to have been undertaken by Defendants were undertaken by each of Defendants individually, were actions that each of the Defendants caused to occur, were actions that each of the Defendants authorized, controlled, directed, or had the ability to authorize, control or direct, and/or were actions in which each of the Defendants is liable.  Each of the Defendants aided and abetted the actions of the other Defendants, in that each of the Defendants had knowledge of those actions, provided assistance and benefitted from those actions, in whole or in part.  Each of the Defendants was the agent of each of the other, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of the Defendants.

## COUNT I:  COPYRIGHT INFRINGEMENT [ALL DEFENDANTS]

42.     Plaintiffs repeat, reallege, and incorporate by reference the allegations of paragraphs 1 through 41 as though set forth fully herein.

43.     DAVID SEIDE is the exclusive owner of the copyrights in all of the asserted Copyrighted Works.

44.     Plaintiffs have complied in all respects with the Copyright Act of 1976, as amended, and all other laws governing copyright, including the registration of the Copyrighted Works.

45.     During the relevant time period, Defendants had access to the Copyrighted Works, and without authorization from Plaintiffs did reproduce, prepare

derivative works based on, distribute, display publicly, and/or copy one or more of the Copyrighted Works into the pages of the Infringing Website that are substantially similar, if not identical, to the Copyrighted Works.

46. Upon information and belief, the aforesaid infringements have continued through the filing of this action, are ongoing, and are likely to continue.

47. Upon information and belief, Defendants knowingly, recklessly, and willfully infringed, induced the infringement of, vicariously infringed, waived immunity for and contributed to the infringement of Plaintiffs' exclusive rights in one or more of the Copyrighted Works.

48. As a direct and proximate result of Defendants' unauthorized copying of the Copyrighted Works, Plaintiffs has suffered and will continue to suffer irreparable harm, damages, and economic injury.

**COUNT II: COPYRIGHT MANAGEMENT INFORMATION, 17 U.S.C. §1202 [ALL DEFENDANTS]**

49. Plaintiffs repeat, reallege, and incorporate by reference the allegations of paragraphs 1 through 48 as though set forth fully herein.

50. Plaintiffs displayed copyright information on, imbedded in or in connection with the Copyrighted Works when Plaintiffs licensed the Copyrighted Works to LEVEL-1, including, DAVID SEIDE's name as "creator", DAVID SEIDE as Photographer, the Date Created, the Job Identifier, the Credit Line, the Copyright Notice, the Copyright Status, and the Rights Usage Terms. This and related information constitutes "Copyright Management Information" as defined by 17 U.S.C. §1202(c).

51. Defendants intentionally removed and/or altered the Copyright Management Information associated with the Copyrighted Work in connection with its use and display on Level-1.com.

52. Defendants knew or had reasonable grounds to know that removal of such Copyright Management Information will induce, enable, facilitate, or conceal infringement of the Copyrighted Work.

53. Defendants' removal and/or alteration of Copyright Management Information is and has been without plaintiffs' authorization or consent.

54. Plaintiffs have been harmed through defendants' removal and/or alteration of Copyright Management Information associated with the Copyrighted Work.

55. As a result of defendants' wrongful conduct, plaintiffs are entitled to injunctive relief and statutory damages pursuant to 17 U.S.C. §1203

### COUNT III: BREACH OF CONTRACT [LEVEL-1]

56. Plaintiffs repeat, reallege, and incorporate by reference the allegations of paragraphs 1 through 55 as though set forth fully herein.

57. Plaintiffs had a contract with LEVEL-1 to nonexclusively license the Copyrighted Works for use as flash components of the Infringing Website at the domain name <level-1.com>.

58. Upon information and belief, LEVEL-1 used the Copyrighted Works at the Infringing Website as more than flash components, and such use was beyond the scope of the license and without permission from Plaintiffs.

59. Pursuant to the terms of the contract, i.e. the LEVEL-1 License, LEVEL-1 agreed to pay $1,800 for a license term of three months, or $600 per month. LEVEL-1's failure to include the copyright notice required under the terms of the LEVEL-1 License resulted in a doubling of the license fee, to $1,200 per month. As of the date hereof and after allowing all credits, the unpaid balance due and owing to Plaintiffs is at least $86,400.

60. As a result of LEVEL-1's unilateral, unauthorized, and expanded use of the Copyrighted Works; and its failure to pay the amounts due to Plaintiffs, LEVEL-1 breached its contract with Plaintiffs.

61. Plaintiffs have performed all of the conditions of the LEVEL-1 License to be performed by it.

62. As a result of the breach of contract by LEVEL-1, Plaintiffs have been damaged in the amount of at least $86,400.

63. Under the terms of the LEVEL-1 License, LEVEL-1 shall be responsible for all court costs, "reasonable legal fees and expenses, and legal interest on any award or judgment" in favor of Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for findings and judgment in its favor and against Defendants, and each of them jointly and severally, as follows:

AS TO ALL DEFENDANTS:

1. That Defendants have infringed Plaintiffs' copyright rights under the Digital Millennium Copyright Act, 17 U.S.C. § 501;

2. That Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners and assigns, and all persons acting in concert or participation with each or any of them, are hereby permanently enjoined from directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of Plaintiffs' copyrights in the Copyrighted Works or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created;

3. That plaintiffs be awarded damages for Defendants' copyright infringement based on: (i) Defendants' profits derived from their unlawful infringement of Plaintiffs' copyrighted works and infringing derivatives thereof; (ii) Plaintiffs' actual damages sustained from Defendants' infringement; and (ii) statutory damages for each act of willful infringement in an amount up to $150,000 per work, totaling at least $1,050,000, as set forth in 17 U.S.C. § 504 & 505, at Plaintiffs' election before the entry of a final judgment, together with prejudgment and post-judgment interest;

4. That plaintiffs be awarded statutory damages for defendants' alteration and removal of Copyright Management Information under 17 U.S.C. § 1203(c) in an amount of $25,000 per violation of 17 U.S.C. § 1202, totaling at least $175,000, together with prejudgment and post-judgment interest;

5. 5. That the Court award plaintiffs costs of suit incurred herein, including attorneys' fees, as provided by 17 U.S.C. §§505 and 1202;

6. That the Court award such other and further relief as the Court may deem proper;

Case: 1:16-cv-02975 Document #: 1 Filed: 03/09/16 Page 14 of 14 PageID #:14

AS TO DEFENDANT LEVEL-1:

7. That LEVEL-1 breached its contract with Plaintiffs and be ordered to pay Plaintiffs $86,400 plus pre-judgment and post-judgment interest, attorneys' fees and the costs of the suit pursuant to the agreed-upon terms of the LEVEL-1 License; and

8. That Plaintiffs shall have such other and further relief as the Court may deem proper.

Respectfully submitted,

Dated: March 9, 2016  By:____/jvnorvell/_____

Joseph V. Norvell
Joseph T. Kucala
J. Ryan Hinshaw
NORVELL IP LLC
1776 Ash Street
Northfield, Illinois 60093
courts@norvellip.com
Phone: (888) 315-0732
Fax:    (312) 268-5063

*Attorneys for David Seide and Defined Space, Inc.*

14